IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICO L. GLYNN,

        Petitioner,

    v.                             Case No. 12-3030-SAC

JAMES HEIMGARTNER, and
ATTORNEY GENERAL OF KANSAS,

        Respondents.

**MEMORANDUM AND ORDER**

This case comes before the Court on a petition for habeas corpus filed pursuant to 28 USC § 2254 by an inmate at El Dorado Correctional Facility who was convicted of attempted first-degree murder, aggravated burglary, aggravated battery, and attempted aggravated robbery. The parties agree to the procedural history of the case and to the facts as set forth in Respondents' brief.[1] Accordingly, the Court adopts those facts as correct and finds it unnecessary to set them forth herein except as necessary to the analysis of the Petition. *See* 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

---

[1] The sole fact not stipulated to is: "Lupton stated Petitioner never asked for money but automatically assumed it was a robbery. Lupton never identified Petitioner as her attacker from a photographic array." Dk. 14, p. 3.

## I. Incorporation of Ruling on Related Petition

This habeas petition raises several issues identical to those raised in Petitioner's companion habeas petition in *Glynn v. Heimgartner, et al*, No. 12-3031 (D. Kan. 2013), and the Court incorporates herein its recent ruling in that case. Accordingly, the following issues raised in this case are governed by the analysis and result set forth in the Court's recent ruling on that habeas petition, and will not be repeated here: 1) Petitioner's Fifth Amendment rights were violated because his statement to police was coerced, yet was not suppressed; 2) the court used his prior juvenile adjudications to enhance his sentence, violating *Apprendi* and *Blakely*; 3) Petitioner's DNA was obtained in violation of the Fourth and Fifth Amendments; and 3) his trial and appellate counsel rendered ineffective assistance of counsel. Claims that are not duplicative of those addressed in his companion habeas petition are addressed below.

## II. Other Issues

### A. Sufficiency of the Evidence

Petitioner claims that insufficient evidence was presented to support his convictions of aggravated burglary and attempted aggravated robbery. Because these two arguments are interrelated, the Court addresses them together.

A criminal defendant has a federal due process right against conviction "except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime with which he is charged." *Jackson v. Virginia,* 443 U.S. 307, 314 (1979) (citation omitted). When reviewing the sufficiency of the evidence in a habeas corpus action "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. In petitioner's direct appeal, the KCOA restated and applied this constitutional standard. *See Petitioner*, 2007 WL 1041759 at *3.

To prove aggravated burglary under Kansas law, the State was required to show that Petitioner entered the home with the intent to commit a felony therein. *See* K.S.A. 21–3716. The underlying felony alleged by the State was aggravated robbery. Petitioner complains of insufficient evidence of his intent to commit aggravated robbery, stating: 1) persons inside the apartment only assumed he intended to rob them; 2) one person offered his wallet to Petitioner because he only thought a robbery was taking place; 3) Petitioner never requested the wallet or attempted to retrieve it; and 4) Petitioner left the apartment with no wallet or valuables from anyone.

In challenging the sufficiency of the evidence establishing his intent to commit an aggravated robbery, Petitioner relies on testimony by himself and one witnesses that he never asked for money or property while inside the apartment, and that the witness merely assumed he wanted money. Dk. 1, p. 16. Petitioner also points to a witness's testimony that Petitioner asked

3

him what he had. Petitioner thus asserts that the testimony about his intent to commit robbery was too vague and insufficient to show that he intended to rob anyone, let alone the victim.

But Petitioner ignores other testimony of record. Lupton testified that she remembered Petitioner asking for money at some point during the incident. And the same witness who testified that Petitioner "asked [him] what [he] had," interpreted that question to be a request for money or valuables. That witness also testified that Petitioner said, "Give me what you got." S.C. testified that she woke and heard a man talking about money. *See Glynn*, 2007 WL 1041759, 3. S .C. also testified that she heard her brother say that Glynn wanted money. Other evidence showed that Petitioner forced his way into the apartment, was armed with a knife, and threatened the victims. (R. XIII, 38, 41, 43, 86-92, 119-20.) *See* R. XIII, 87, 121.). The jury was entitled to make credibility calls and reasonable inferences from all the testimony in the case, and could properly have found that Petitioner intended to rob them. Sufficient evidence was thus presented of Petitioner's intent to commit an aggravated robbery.

Having reviewed the record, the court finds the state court's determination was neither a contrary nor an unreasonable application of *Jackson,* nor an unreasonable determination of the facts in light of the evidence presented at trial.

## B. Omitted Instructions

### 1. Voluntary Intoxication

Petitioner claims that the trial court's failure to give a voluntary intoxication instruction violated his right to a fair trial. Petitioner did not request such an instruction at trial, however.

On habeas review, this Court's role in evaluating jury instructions is limited—it looks only to determine if instructional errors "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense." *Shafer v. Stratton,* 906 F.2d 506, 508 (10th Cir. 1990) (quotation omitted). *See also Nichols v. Sullivan,* 867 F.2d 1250, 1253 (10th Cir.) ("the scope of our review is narrow: our responsibility is to ensure that [petitioner] was afforded the protections of due process, not to exercise supervisory powers over the [state] courts."), *cert. denied,* 490 U.S. 1112, (1989).

Petitioner contends that the voluntary intoxication instruction was necessary because the state's witness mentioned Petitioner's cocaine use to the jury, in violation of a motion in limine. But Petitioner must show that the failure to provide the instruction so deprived him of due process that it caused his trial to be fundamentally unfair. *See Maes v. Thomas,* 46 F.3d 979, 984 (10th Cir. 1995), *cert. denied,* 514 U.S. 1115 (1995).

The KCOA found no clear error, stating:

> In Glynn's case, there was no evidence that he was intoxicated. The question posed by the prosecutor about whether Glynn was using

cocaine at the time of the incident was not answered because of an objection by defense counsel. The only other statement which could even remotely be construed as referring to drug use was Glynn's assertion that he was "too far gone." However, that statement could easily have applied to mental illness, fatigue, or rage.

We do not believe there was evidence to warrant a voluntary intoxication jury instruction, especially since the instruction was not requested by defense counsel. Therefore, we believe the failure to give the instruction was not clearly erroneous.

*Glynn*, 2007 WL 1041759, 9.

Under Kansas law, voluntary intoxication is not a complete defense to a criminal charge, but the fact of intoxication may be taken into account in determining the element of specific intent. *See* K.S.A. § 21-3208(2). Voluntary intoxication provides a defense "only if such condition was involuntarily produced and rendered such person substantially incapable of knowing or understanding the wrongfulness of his conduct and of conforming his conduct to the requirements of law." K.S.A. 21–3208(1); see *State v. Brown,* 291 Kan. 646, Syl. ¶ 4, 244 P.3d 267 (2011). The instruction commonly provides, in relevant part:

> Voluntary intoxication may be a defense to the charge of Attempted 1st Degree Murder, where the evidence indicates that such intoxication impaired a defendant's mental faculties to the extent that he was incapable of forming the necessary intent.

PIK Crim.3d 54.12.

Here, however, Petitioner does not point to testimony that he was impaired by cocaine at the time of the crimes. The record shows that Det. Jacobs was asked: "Did [Petitioner] start off telling you that he had a crack

6

cocaine problem?" and replied," Yes, he did." He was then asked," And did you ask him about when he was using crack cocaine?" But an objection was made and that question was never answered. During the ensuing colloquy of counsel, the Court ruled that the motion in limine had not been violated. *See* R. Vol. 13, pp. 215-225. One cannot reasonably infer from the fact that Petitioner told police officers he had a crack cocaine problem that he was impaired at the time of the crimes to the extent that he was incapable of forming the necessary intent. Thus no factual basis for the instruction was shown, and no unfair trial was caused by its absence.

### 2. Eyewitness Identification

Petitioner next claims that the district court erred in failing to instruct the jury to consider eyewitness identification with caution. Here, as above, Petitioner did not request such an instruction at trial.

The KCOA recognized that "[i]n any criminal action in which eyewitness identification is a critical part of the prosecution's case and there is a serious question about the reliability of the identification, a cautionary instruction should be given advising the jury as to the factors to be considered in weighing the credibility of eyewitness identification testimony." *Glynn*, 2007 WL 1041759, 8. But the KCOA found no "serious question" about the reliability of the identification, so found no clear error in the court's not giving the instruction. *Id.*

Petitioner contends that his identification was suspect because two witnesses failed to identify him, and the third witness told police "Rico or Chris" was the suspect. Petitioner asserts that this identification was inaccurate because Chris is dark skinned and Petitioner is light skinned. But Petitioner ignores the evidence that the third witness, who picked him out of a photo line-up after the crimes, had seen him before the crimes and recognized him during the crimes. Under these circumstances, Petitioner has failed to show any error in the trial court's not giving the desired instruction, *sua sponte*, nor has Petitioner shown that the absence of the instruction had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense.

### C. Omission of Elements from Charging Document

Petitioner claims that the charge of attempted murder in the complaint/information failed to include the essential elements of intent and premeditation so was fatally defective, rendering his conviction and sentence unconstitutional. The charging document charges this crime by stating in relevant part:

> … on or about the 29th day of April, 2003 … RICO L. GLYNN did … unlawfully, towards the perpetration of the crime of First Degree Murder, as defined by K.S.A. 21-3401, commit the following overt act(s), to wit: after forcing his way into the home of [J.L.] demanded money, prevented her from leaving the residence, forced her to lie down on the floor beside her two children, then sat on her, raised her head and cut her throat, with the intention to commit said crime, and … failed in the perpetration thereof.

R. Vol. I., p. 1 (Case No. 03-cr-1254, dated June 13, 2003). K.S.A. 21-3401 defined "murder in the first degree" to include "the killing of a human being committed: 1) intentionally, and with premeditation."

Petitioner did not present this issue to the KCOA on direct appeal, *see Glynn v. State*, No. 103,961/103,962, 2011 WL 2795775, so has not met the requirement that he exhaust this claim before the state courts. *See Picard v. Connor*, 404 U.S. 270, 275 (1971) ("[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus."). Although Petitioner raised this issue in his K.S.A. § 60-1507 motion, he failed to give the state courts a full opportunity to address this claim. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Under these circumstances, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

To overcome this procedural default, Petitioner must show cause for his default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that this Court's failure to consider these claims will result in a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 488-89, 496 (1986). Petitioner contends he was not aware of the illegality in the charging document at the time of his direct appeal. But to show "cause" for his default, Petitioner must show that some external factor prevented him from raising the claim. *See Coleman*, 501 U.S. at 753.

Petitioner has made no such showing, so has not overcome procedural default.

Nor has Petitioner shown that denying review on the merits of this claim would be a miscarriage of justice. A miscarriage of justice is shown when the error complained of probably resulted in the conviction of an innocent person. *Bousley v. United States*, 523 U.S. 614, 623 (1998). But here, application of this exception is soundly defeated by the eyewitness testimony, the incriminating statements made by Petitioner, and the lack of any merit to Petitioner's claim that the charging document failed to charge intent and premeditation.

### D. Suggestive Photo Line-up

Petitioner claims that the victim's photographic identification of him should have been suppressed because the photo lineup was unduly suggestive. Petitioner, who is light-skinned, alleges that the photographs singled him out because all other photographs in the lineup were of dark-skinned African males. The trial court found that the photos were all of males that looked similar to and of the same race as the Petitioner. R. Vol. XII, p. 7.

#### 1. State Court Ruling

The KCOA applied a two-step procedure in analyzing whether the identification should have been excluded. "First, the court determines whether the procedure used for making the identification was impermissibly

suggestive." In so determining, courts have used a number of factors, including the size of the array, the manner of its presentation by officers, and the details of the photographs themselves. *State v. Love,* 267 Kan. 600, 604, 986 P.2d 358 (1999)." *Glynn*, at 7. If the procedure was impermissibly suggestive, the second step requires "an analysis of whether the impermissibly suggestive procedure led to a substantial likelihood of misidentification." *Id*. In making that determination, the court considers the totality of the circumstances surrounding the identification. *Glynn*, 2007 WL 1041759 at *7.

The KCOA reviewed the relevant facts:

> Detective Jacob testified that the photographic arrays presented to each victim contained six photographs; each victim was shown a different array. Detective Jacob clarified that the computer chose a wide variety of pictures which matched Glynn's general appearance. Each victim was read an admonition and told that they were under no obligation to identify anyone, it was important not to guess, and they should not assume the suspect was included in the pictures.
>
> Glynn's main concern is that the photographic identification became impermissibly suggestive because of S.C.'s prior contact with Glynn. However, the entirety of S.C.'s testimony at trial was that she recognized Glynn as someone she had previously met, and knew it was him from the moment she walked into the living room on the night of the attack. S.C.'s testimony makes it clear that she independently recognized Glynn as her attacker, and her identification of him in the photo array was not impermissibly tainted.

*Glynn*, 2007 WL 1041759 at *7.

### 2. Habeas Analysis

The Supreme Court has held that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be

set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). The admission of evidence of a pretrial identification "without more does not violate due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

To determine the constitutionality of pre-trial identification procedures, the Court examines not only whether the procedure was impermissibly suggestive but also whether the identification was nonetheless reliable.

> A two-tier analysis is used to examine the constitutionality of pre-trial identification procedures. *Grubbs v. Hannigan*, 982 F.2d 1483, 1489 (10th Cir. 1993). First, the Court must determine whether the procedure was unnecessarily suggestive. *Id.* (citing *Archuleta v. Kerby*, 864 F.2d 709, 711 (10th Cir. 1989)). If the procedure is found to be unnecessarily suggestive, the Court "must then weigh the corrupting influence of the suggestive procedure against the reliability of the identification itself." *Id.* at 1489-90 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). "[R]eliability is the linchpin in determining the admissibility of identification testimony...." *Brathwaite*, 432 U.S. at 114. "Even if the identification procedure is suggestive, the introduction of the identification evidence does not necessarily violate a defendant's due process rights." *Archuleta*, 864 F.2d at 711 (citing *United States v. Williams*, 605 F.2d 495, 498 (10th Cir.1979)). A pre-trial identification procedure does not violate due process unless it is so unnecessarily suggestive that it is "conducive to irreparable mistaken identification." *Grubbs*, 982 F.2d at 1490 (citing *Kirby v. Illinois*, 406 U.S. 682, 691, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court identified five factors to be considered in determining the reliability of a pre-trial identification. Those factors are:
> > the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty

> demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
>
> *Biggers*, 409 U.S. at 199-200. If the corruptive effect of a suggestive pre-trial identification procedure outweighs the reliability of the identification, then the identification testimony should have been suppressed. *Grubbs*, 982 F.2d at 1490 (citing *Archuleta*, 864 F.2d at 711; *United States v. Thurston*, 771 F.2d 449, 453 (10th Cir. 1985)). "The totality of the circumstances must be considered to determine whether sufficient independent basis for the identification leads one to conclude that the identification is reliable." *Snow v. Sirmons*, 474 F.3d 693, 720 (10th Cir. 2007) (quoting *Williams*, 605 F.2d at 498 (1979)).

*Washington v. Mullin*, 2008 WL 2003760 (N.D.Okla. 2008). The test applied by the KCOA is substantially similar to the federal test outlined above, and is neither contrary to nor an unreasonable application of established Supreme Court precedent.

The KCOA's determination of the facts was also reasonable. Petitioner admits that of the three persons who viewed the challenged photographic line-up, only one identified him, although all three had "told police that the suspect was light-skinned, possibly Hispanic." Dk. 6, p. 21. That two of the three victims were unable to identify him from the line-up cuts against any suggestiveness. The one who did identify Petitioner had seen him before the crime and recognized him during the crime, lessening the possibility that Petitioner's lighter complexion than others in the line-up had any effect whatsoever.

### E. Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance of counsel by his trial and appellate counsel. His trial counsel allegedly failed to request

a voluntary intoxication instruction, failed to object to the state's use of a copy of the search warrant instead of the original, and failed to review the complaint/information to discover its "jurisdictionally defective charge" of attempted first degree murder. His appeals counsel were allegedly ineffective because they refused to argue on appeal the DNA or other issues which Petitioner desired.

Petitioner did not raise ineffectiveness of counsel to the state court on direct appeal. He raised the issues relating to the DNA search only incidentally in his appeal from the denial of his K.S.A. 60-1507 petition. See *Glynn*, 2011 WL 2795775 at *5 ("In one sentence, [Petitioner] suggests both his trial counsel and appellate counsel were ineffective for failing to properly challenge the DNA search . . ."). The state court found Petitioner's allegations to be conclusory and insufficient to make out a claim of ineffective assistance of counsel. *Id.* This Court cannot clothe Petitioner's naked ineffective assistance claim with substance. Because Petitioner failed to properly raise his claims in state court, they are procedurally defaulted. *See United States v. Flood*, __ F.3d __, No. 12-4094 (May 9, 2013).

Alternatively, to the extent the State court ruling could be viewed as a decision on the merits, it is a reasonable one and thus withstands habeas review. The rulings made above in this case and those made in Petitioner's companion habeas petition (No. 12-3031-SAC) demonstrate that Petitioner's

claims of deficient performance of counsel either lack merit or challenge matters that are considered sound trial or appellate strategy.

## III. Evidentiary Hearing

The court finds no need for an evidentiary hearing. ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)" *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) *Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010). Petitioner has not met this standard as to any issue presented, and no certificate of appealability shall be granted.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1, 6) is denied.

Dated this 5th day of June, 2013, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge